If it may please the Court, good afternoon, Your Honors. I'm Paul Hesnecker on behalf of the appellant, Shimon Kennedy, and I would request, respectfully, five minutes for rebuttal. Very well. Thank you. Your Honor, I want to begin with a, hopefully, a very careful examination of the motion to suppress and the denial of the motion to suppress by the District Court, as I believe that there is, as there is an ever-expanding and very careful look at the expectation of privacy interests by this Court and other circuits, there should be an equally careful examination on the expanding power that the police have to encompass searches that are well beyond the scope of what would be reasonable. In this particular case— Maybe you could talk about the expectation of privacy— I'd be glad to address that. —in this case that Kennedy had, given that he was not an authorized driver of the vehicle. That's correct, but he was not an unauthorized. In fact, he was given permission by his girlfriend, Courtney Fields, who was an authorized driver of the vehicle. How could that authorize it? I'm sorry, Your Honor? I'm sorry. Go ahead. Let me just follow up. Does his expectation of privacy stem from the renter or from Ms. Fields? I think it extends from Ms. Fields, who is authorized to give him permission, and I believe— Can she do that if she didn't list him in the agreement? Absolutely. Absolutely. In fact, the government concedes in their brief that the agreement does not exclude anyone, unauthorized drivers. What it says is this is a particular authorized driver and that she's allowed to use the vehicle, but in some of the cases cited by the government, the specific—in fact, the Wellman case specifically mentions the fact that there's an exclusion portion of the contract which excludes other drivers as being unauthorized. Your argument is a property rate—a contract-based argument? No, it's— Had a more encompassing statement in the document saying, and if you're not authorized, you're unauthorized. No, Your Honor. Your case would be different? I'm sorry. No, no, Your Honor. In fact, that's what the government argues in defense or in counter to the argument that he had standing the finding of the lower court, specifically because the issue of standing, which is obviously the expectation of privacy, is one of relationship. And given the way the courts have analyzed the relationship, they look at several factors. One test, obviously, as the court knows, is the totality of the circumstances test. Is the driver a licensed driver? Does he have permission from the authorized driver to use the vehicle? Now, when you say from the authorized driver, it's true that you have a couple of circuits that seem to lean your way on that, but you have other circuits that say pretty expressly, I think, that the only body that can give authorization to drive a car is the person that has the property ownership in the car. They can't, you can't, a lessor can't, excuse me, a lessee can't go about granting something that they never got in the first place. Otherwise, it makes the whole idea of authorized drivers on a document a nullity. Well, I think what it does, though, Your Honor, it allows for an inquiry, fact-based inquiry, into the relationship between the driver and the authorized user of the vehicle. So, for example, in the cases... The driver being Kennedy and the authorized user being Fields? Fields, absolutely, absolutely. Kennedy gets his expectation of privacy from Fields, who rented the car. Kennedy gets his expectation, Your Honor, of privacy based on a totality of the circumstances, which would be the relationship he had with the authorized driver, the period of time in which he drove the vehicle, which all these factors are ones in which the courts have looked at as a way to analyze, on a case-by-case basis, applying the totality of the circumstances case, whether or not there is a expectation of privacy. Would it matter... So it would be all those, I'm sorry. Would it matter whether or not Kennedy knew that the car was rented and that he was not an authorized driver? I think there'd have to be something on the record that indicated he was not an authorized driver from the one who was authorized to use the vehicle. I'm just wondering about this idea of transferring... It seems like it's transferring an expectation of privacy because if Fields can transfer that right to Kennedy by allowing him to drive, I would assume Kennedy could do the same thing. Well, I think that's one way of looking at it. I think another way of looking at it is what it really is, is it's an encompassing expectation of privacy that includes those vessels, whether it's an apartment, whether it's a house, or whether it's a vehicle, that the person who's the subject of the search, or seizure in this case, because the initial question is the seizure, is in fact protected because of their relationship to the person who gave authority. So, for example, that would include anyone who would give authority for a person to, let's say, sublet an apartment. In this case, it's a car, so... What about from the standpoint of the landlord, or the owner, or the owner of the rental company? They say, tell us who else is authorized to use this car. Put it down on this application. There are reasons for that. There are reasons. It has to do with risks, with insurance, with where the car is, who has the car, etc. So, I mean, doesn't that factor into the equation? It has factored, and I think the cases in which the government cites, it factors in because I think that there's a way in which, under each case, you analyze the relationship between the driver and the authority that the driver gives, and the authority the driver's given by the authorized user. Let's take this case. This case. Mr. Hatzinger. Yes, Your Honor. I'm surprised that you didn't follow through. Are you not arguing that he was a borrower of a car, and therefore the teachings of our case in Baker would apply?  And in fact, I cite Baker extensively, and I think the difference, Your Honor, the difference is... All right, now let's, because that's just a preliminary question. At one point, at what point did the rights as a borrower terminate? They did not in this case. They did not. In fact, they are maintaining... What then, how do you describe where the owner of the car  does that not, at that moment, terminate any expectation of privacy that the, quote, borrower had? I don't believe it does, because I don't think there was any inquiry. Because I don't think there was any... The car was not in stolen status. The car was lawfully in possession of Courtney Fields. I don't believe there was any effort to contact Courtney Fields to find out if he was unauthorized to use the vehicle. I think this was a pretext. The question is at the moment of impoundment. And I think it was a pretext. But that was Judge Aldister's question. Once the vehicle is impounded, doesn't that terminate the expectation of privacy? I don't believe it does. I think under these facts, if you look at the Baker case, the question of borrower, as opposed to any proprietary... Wait a minute, just a minute, counsel. Yes, Your Honor. Are you arguing to us that the owner of this car, owner of any car, cannot give permission to the police to impound the vehicle? No, that's not what I'm saying. No, that's not what I'm saying, Your Honor. What I'm saying are these set of facts. I'm sorry. Okay. That is these facts. That is these facts. This owner said, take the car. And whether the police contacted Ms. Fields or not, once the owner of the car said, hey, take the car, why can't they take the car and conduct an appropriate inventory? Because you have an intervening contract. And the intervening contract is with Courtney Fields and her mother. She was authorized to use the car at that point. So now the contract matters. Well, it matters because the government has argued it matters. It matters because you have to still examine the relationship, Your Honor, as to my client... Don't you see a bit of a problem between saying, well, that contract stuff doesn't really matter all that much when you talk about authorized drivers. But it's determinative if the owner of the vehicle wants to step in and tell the police, go ahead and take it. No, I think the police have an obligation at that point to find out whether or not the car was ever in the lawful possession of the person that was arrested. And in this case... Aren't the facts here that they contacted Mr. Culp and Mr. Culp said he's not on the contract? But that doesn't mean he's not a lawful borrower of the car, that he legitimately has the car in his possession. In other words, if the contract... The renter of the vehicle, excuse me, the owner of the vehicle who has rented it out is responsible to say, well, let me get in touch with Ms. Fields and see who she might have borrowed it to in derogation of our contract. I think it's the position. It would be no different than, in fact, if someone was leasing an apartment and someone who on that lease has an expectation of privacy in that particular apartment is then authorized by the landlord, authorizes the police to go in and search. It's the same analysis. In other words, there's an intervening factor that's critical and critically important in this case. What the government has argued is the fact that the contract is silent with respect to whether underauthorized drivers are allowed to use the car is insignificant. I think it's a significant factor under the totality of circumstances case. So you look to see whether he had legitimate... I'm sorry, Your Honor. I'm sorry to interrupt you because the case of South Dakota, the Opperman Supreme Court case 428, indicates that the police routinely impound vehicles in order to protect the owner's property. Now, that being the purpose of impoundment, to protect the owner's property, and you add to that the owner asking, permitting the police explicitly to impound it, you keep going using the expression totality of the circumstances. But we have to zero in where we had the intervention of the owner that it may be, it can be argued that once you have an expectation of privacy, that privacy exists and it doesn't terminate by the appearance of the owner. However, once you get the factor of impoundment involved, you have a situation where I haven't heard an adequate explanation on your part saying that once the impoundment came, there was no expectation of privacy. Well, Your Honor, the best way I can respond is that was a pretext. It was clearly a pretext. They had a warrant for my client's arrest. When they arrested him two and a half blocks from the vehicle... If it wasn't a pretext, if it's determined that it wasn't a pretext, that was a legitimate impoundment. I mean, supposing hypothetically that we came to that conclusion, would you answer the question yes? That the impoundment cuts off the expectation of privacy? Well, I think they're intertwined. I think they're so intertwined in this case because the reason why I do, Your Honor, is this is an unusual set of facts. The government is essentially asking this court to expand the scope of police power to a sphere beyond what is reasonable. There is a car parked two blocks away. There are no facts connecting criminal activity to that vehicle. My client's arrested... You don't question the fact that upon an impoundment, the police have to do an inventory search of the vehicle? The question is whether that impoundment is legitimate, whether that was... But I said, supposing, hypothetically speaking, that we have a case where the impoundment is not pretextual, that it was a car that they saw on the streets, been there for five or ten days. They pick it up. They have to go ahead and do an inventory search. Doesn't that cut off any expectation of privacy that the owner or driver of that vehicle has? Under the community caretaking provisions that the court have recognized, yes. Okay, so you win if there was an actual impoundment. I guess what I'm asking the court to do is look at the Duguay case, which is what I cite in this brief. And you argue that on the theory that the pretext is what makes the difference there. But that makes me wonder, what difference does it make what the police officers have in their mind if they succeed in speaking to the owner of the vehicle and the owner of the vehicle says, I want you to take that into custody? Because I think it's based on the facts specific as to the information that was provided to the owner at the time and whether or not there was any inquiry as to whether the leasee of the vehicle was contacted or had parked that car in a legitimate location on the street without any parking violations. There's no allegation that there's any community caretaking function necessary at that point. We leave community caretaking out of it for a minute. Just thinking about it in terms of somebody owns the car and the owner of the car says, take it into custody. Your argument is that the police couldn't do that lawfully if in their mind they're thinking, well, that's what we want because we really want to search this vehicle. Correct. What's subjectively in their mind that makes that unlawful, right? Well, to best answer your question, my position is that they knew they couldn't get a warrant. They had no probable cause to search that vehicle. So what they did was they contacted the rental agency in an effort to use this empowerment argument, this community caretaking function argument, to seize the vehicle and then search it. That's my position. We have to try to get to the other side. You have five minutes, everybody. We'll get you back. Thanks very much. May it please the court. Good afternoon, Your Honors. Based upon the questions that Mr. Hetznecker was facing, I think the court is seeing this very much the way the government did at the time that the district court found that there was, in fact, standing with respect or a Fourth Amendment. Always dangerous to start. It is always dangerous, yes, to state standing. But it is, in fact, a Fourth Amendment right to privacy in this particular vehicle. The facts in this case are not that unusual. The facts... Well, I think we're familiar with the facts. So it would be most helpful, to me at least, if you would go directly to the assertion that your opponent makes that, in this instance, the police could have and should have found out what was going on with that car. In fact, they were watching it. And the person who was the authorized driver arrived at the scene, tried to get in, and was shooed away. But this is, in essence, like the Dugway case. And we shouldn't tolerate that. That seems to be their pitch. That does seem to be their pitch. And this is not like the Dugway case. In the Dugway case, you had an incident where the two individuals were stopped. They were actually in the vehicle together. The girlfriend was the passenger in the car, and she was also the owner in the car. In this incident, we have a situation where Mr. Kennedy is driving a car that the CI that saw him earlier in the day said, I've never seen him driving this car before. He's got other cars. This is not one of those cars. He describes the car. When he is arrested two and a half blocks away from the car, he has in his hand a key that says, Culp Rental Car on it, and describes a silver camera. But all that goes to the impoundment, doesn't it? It doesn't really go to his expectation of privacy. Well, it... Let's say, let's take Judge Aldister's example. Supposing he just borrowed the car. What's wrong with that? Under Baker, he's a borrower. I borrowed the car. Yes, that is true. But that is not... We do not have the Baker circumstance here because of what happens subsequent. And that is that the police do good police work in this case. They take that car key, and they track down this small rental agency, this Culp Rental, and they actually call the owner of the business. And they say, we have a key to your car. And they check and say, yes, we only loaned out one key to the car. Please impound our car. Why does the fact that Culp requested that the police secure an impounded vehicle necessarily negate Kennedy's expectation of privacy? At the time that the seizure occurs, Mr. Kennedy's rights have been negated because the owner of the car has said, take my property back. Mr. Kennedy is in custody. Mr. Kennedy cannot go and retrieve that vehicle. At that time, the police don't really even know about Courtney Fields. At the time, as Judge Jordan mentioned, when Ms. Fields comes to the vehicle, the record is clear that Ms. Fields does not identify herself as someone who has some control over this car. She's just one of three unidentified people who come up and look in the vehicle and then leave. They know how to get a hold of Mr. Culp because they do. I mean, pretty simple thing to call Mr. Culp and say, hey, who's the person who's rented this vehicle from you? We need to get in touch with them. I mean, that's a one-minute phone call, right? Why couldn't they just do that and talk to her? Because at that point in time, they'd already called Culp Rental and Culp Rental had said, please impound the car. It's not for the police to decide the contractual issue of who the car will be released to. Will it be released to Ms. Fields? Will it be released to Culp Rental? The police are supposed to take that vehicle off the street because they've arrested the only person who had a key to that car and not leave it on the street when the owner has asked that it be taken in. So does your case here depend upon the finding or a determination that there really needed to be a community caretaking step, that that car needed to be taken off the street right then? No, I don't think that my case does rely upon that. My case relies upon the fact that at the time of the seizure in this instance, Mr. Kennedy's rights had already been extinguished. Whatever rights we may say that he got. Is that because of the seizure or is that because he was not the authorized driver of the vehicle? No, it's because Culp Rental Car, the actual owner of the vehicle, asked the police to impound the vehicle. Okay, so the heart of your case is, look, whatever the arrangement Culp might have had with other people, Culp owns the car. Once the owner says, get that car off the street, please, take it in to impound, that that's sufficient basis for the police to act on that and then pursuant to the impoundment do a search. Is that right? Yes, yes, that's exactly right. And the police need not become embroiled in the issue of whether or not Ms. Fields still has some contractual relationship with Mr. Culp and who eventually the car would be released to. The police do excellent work in this case. They actually find the owner of the vehicle. The rental contract, the only thing that would have told the police that Courtney Fields had some connection to this car was inside the locked vehicle. And so the police didn't have that. Presumably, Mr. Culp has a copy of the contract and knows how to get in touch with people. Oh, yes, yes. But you're saying that that doesn't matter anyway because that's not their fish to fry. Whatever Mr. Culp's got going in the way of a contract with Ms. Fields, that's for him to work out. It's enough for them to get a hold of the owner. And if the owner says impound, that does it. Is that right? Well, no, I think the court misunderstands me. What I'm doing is I'm walking through what the police did at 9 o'clock that night when they arrested Mr. Kennedy. The only information they have is they have the Culp key. And so they call Culp rental car and Culp says, please impound our car. And they do not at that point have the contract. Culp, I'm sure, had the contract at that point in time. I'm sure they were checking that information. But the police have no obligation to say, well, do you have an authorized renter of this car? They went straight to the owner. And the owner said, please impound our vehicle. From that point forward, they, again, act very reasonably in that they begin an inventory search. And once they begin an inventory search, they actually stop when they find what they believe may be contraband. And they develop probable cause and get a federal search warrant to search the car. So- Pardon me, Ms. Stark. I think you're arguing too much here because what we have here is a question of expectation of privacy and assumes for the sake of argument that he could be considered a borrower. That's an assumption. That he then had an expectation of privacy. Now, when did that expectation of privacy cease? That expectation of privacy would have ceased at the time that he was arrested and the police contacted the owner. That is when his expectation of privacy ceased. According to the case law, as we've looked at it, whether you're looking- I don't think you have any case saying that. I don't think you have any case saying- Well, actually, Your Honor, we do. And it's an unpublished decision. It's the decision- Well, that's not a case. We do not- That's not a case, okay? Well, the facts of the Mincy case are the closest to ours. And the Fourth Circuit did find, exactly as we have stated, that once- You have an unpublished opinion of another circuit? Yes. Well, that, we might say in English one, that ain't the strongest precedent. That is absolutely right, Your Honor. We have no case in this circuit. Had you followed my questions, I was suggesting that, assuming that he did have a right of privacy, it terminated when the act of impoundment occurred. Because you don't have a right of privacy where the police legitimately, through the intervention and direction of the owner, directs an impoundment- Permits an impoundment. I'm suggesting that it's the impoundment that destroys whatever expectation he had prior to that time. You want to move it up to say at the time he was arrested. Well, I'm not sure that I would agree with that unpublished opinion of the Fourth Circuit. No, no, and I don't- I'm not even sure why you want to do that. And if I gave the court that impression, that's not the argument I'm making. It's not the act of his arrest. It's what the police do subsequent to that in order to develop the fact that they have a vehicle on the street and they, in fact, go to the owner who asks them to impound the car and they then impound the car. So the first time that you have a seizure is that point of impoundment. And once you get there, you already have the owner of the vehicle having said, we don't want Mr. Kennedy to have our property. He's not authorized to have our property. And so we ask you to take that car into your custody and we'll come and get it. Are you conceding that there may be some expectation of privacy? That is when a borrower of a rental car who is not an authorized driver and the car is impounded, do you concede that there may be an expectation of privacy? Well, we certainly have cases in several circuits that indicate that that's the case. That if you have some type of instance where the borrower has, in fact, given permission to someone else, then in those instances, sometimes there could be. But no, I don't concede it in this case. And the reason is in our record here, Mr. Kennedy did not have a valid driver's license and he was doing something illegal with the car. Is that part of the record? He was an unlicensed driver? Yes, it is, Your Honor. Can an unlicensed driver have an expectation of privacy in any vehicle? I would think not, if he's driving it. I mean, regardless of the rental agreement and permission by the, I guess it's a C. If you have someone who's- How do you get an expectation of privacy in an automobile if you don't have a licensed driver? It seems that you would not. And we certainly don't concede that point for those reasons in this case. The fact that we have those additional facts, that he doesn't have a valid driver's license and he's in a position where he's actually used the vehicle illegally. If you want to get into the whole contract law, but- But to a degree, we don't have to, right? I mean, I think I heard you, in essence, agreeing with Judge Aldersert's question a moment ago that to the extent there was any expectation of privacy, it disappeared before the search occurred here. So ferreting out, figuring out whether there was an expectation of privacy is a bit of an academic exercise in this case, isn't it? Yes, yes, that is exactly our point. That if you are not to take the bright line test of the fourth and fifth and 10th circuits, that someone who rents a car from a rental agency can't just willy-nilly give it over to someone else and that person then has an expectation of privacy. If we don't go that way, that bright line way, then in our particular case, it doesn't matter. Ms. Stark. Yes. This is Judge Aldersert interrupting you. In the finding of fact by the district judge, and I'm reading from the transcript at 66 and 67, defendant had a license, had a license. This is page A472 of the appendix. The defendant had a license and authorized driver's permission to use the car, and according to the police, was driving it earlier that day. Therefore, defendant has standing to contest the seizure and searches of the case. I'm just wondering why, if the district court found that he had a license, why does the government say he didn't? Because Your Honor, in the trial of this case, when Mr. Culp testified, there is something in the record, and Your Honor, I'm looking for that now, that states that he did, he had in fact a, did not have a valid license. And that is found at appendix page 262. Mr. Culp is reading from his notes that were taken that evening at line four, contacted Sergeant Bryce, it says, contacted me concerning incident with the rental car. I requested Sergeant Bryce to secure the car. Driver did not have a valid driver's license, which is the reason I would have wanted the car grounded. So we do have those facts in the trial of this case. Those facts were not- And so the, well, what, we're taking an appeal from the district court, and it was a finding of fact of the district judge. Okay, well, let's say, there's a question. Yes, Your Honor, and I think that the, that we are able to rely both upon facts that came out at the trial, as well as facts that came out at the suppression hearing, and- But you are? Are you on? I'm sorry? Okay, all right. So I- This is an appeal, well, this is an appeal from what? Your Honor, this is an appeal from the trial, and it's also an appeal of the suppression. So it's an appeal of both. And I see my time is up. Okay, all right. Thank you. Judge Aldis, sir, do you have any further questions? Did you get an answer? No, I don't. Okay. Your Honor, the appeal in this case was taken on two separate issues, both the suppression and the trial. Let me take up Judge Fuente's invitation for me to ask a question. Can you summarize the government's position in this case, starting out as to when, if any time, the Kennedy had an expectation of privacy? Your Honor, the government's position is that he never had an expectation of privacy. He got this car from his girlfriend. He was not on the rental contract. So it's our position that he really never did. But if you were to find that somehow, through the authorization granted by Ms. Fields, that he somehow did develop some expectation of privacy in the vehicle, that that expectation of privacy was extinguished prior to the police action of the seizure. When you say prior to the action of the seizure, I'm confused. I thought you had said that it was extinguished at the time of the impoundment. Wasn't that what you'd said earlier? Yes, I did. I did. I misspoke. Thank you. Yeah, that was a softball I threw out on behalf of the government when I was questioning your friend. So sometimes questions asked by the court. In fact, Judge Jordan threw you a softball and you could have said you agreed with that. Instead, you started to fight him on that. My advice is it isn't beware of the Greeks bearing gifts. Sometimes we ask questions to help the attorney. Yes, Your Honor. Thank you. Thank you. Thank you, Mr. Hart. Mr. Hetzniker. I assume all my pitches will be hardballs. Just in response, I think that what I'd like to do is put this in context because I think there is a concern by the court, obviously, that the impoundment becomes, as authorized by the owner of the vehicle, in this case, the rental agency, becomes the significant fact that is to determine whether or not there's an expectation of privacy or not. And I would analogize this to, again, as I said before, the renter, the leasee of an apartment, if in fact the police called up and said, and I think the vessel is important, and I think the government uses the term vessel, whether it's an apartment, whether it's a... Yeah, it matters, doesn't it? ...rental locker. No, I think it matters not in this case. It matters in a number of circumstances, but it matters the analysis still applies, which is if the police called and said to the owner of an apartment building, we would like authorization to go into this particular location because we believe that the person in there doesn't have an expectation of privacy. The next step that would be required is to determine whether or not that expectation of privacy exists within that vessel. But doesn't that very argument make the point that the, quote, vessel, unquote, matters because an apartment is not a car and a car is not an apartment? I mean... That's correct. ...the police don't impound apartments. No. They don't check to see whether you've got a license to drive an apartment. And they don't have the habit of going to apartments and just assuming that, well, because you're, or not assuming, saying you're a guest here, therefore you don't have an expectation of privacy. Those things are different when you're talking about a dwelling than when you're talking about an automobile. And ever since Rackus, at least, that's been pretty clear, hasn't it? It is absolutely clear. But what the courts have also said in each one of those cases that involve an automobile because of the nature of its mobility is that you have to take intervening steps in order to protect the Fourth Amendment. In other words, we don't simply eradicate this notion of expectation of privacy simply because the vehicle is roughly parked on a narrow sidewalk, two blocks away from where the arrest occurs. There must be some connection and nexus for the police to go in and even take the step and say, I'm sorry, Your Honor. But how about the circumstance of the Baker case upon which you rely, which is the defendant borrows a car from the owner. Then the owner says, I think I'll just go and take my car back. Just goes over there and takes the car back. Now, does the borrower have an expectation of privacy in that car? And let's say the owner goes inside and finds all kinds of stuff and calls the police. It's a very good fact pattern in support of the government's argument with the one important intervening fact, which is that the government intervened both in Baker and in this case, there's a government intervention. Well, I understand that. But my point was more, does not the owner's retrieval of a vehicle cut off expectation of privacy? That didn't happen in this case. That's my position. My position is that what happened in this case was there was not that next step that would be required in order to satisfy the Fourth Amendment and concerns that I hope this court has over the protecting of vehicles. How about if the governor, the government did not intervene? How about if Mr. Culp himself went over there? The police told him, look, we found your car. It's on the street. So he went over there and picked it up. Completely different ball. I agree with you. Completely different ballgame because the difference is. Why isn't it completely different if what the police say is, hey, your car's on the street. Go get it. What do you want us to do with it? And he says, take it into custody. How is that any different than the police calling him and saying your car's on the street? What do you want to do with it? And he says, I'll come get it because it's a functional matter. Is it the fact that the government made the phone call that makes it unlawful? What happens next? Well, it's absolutely more than just a functional matter because the police, as I said before, use this as a pretext to impound the car. So again, it's it's to what's in the government actor's mind. Well, it's it's more than that. It's what's the what are the facts show? What were the steps taken to ensure that the expectation of privacy, whether recognized or not in this context, was there an attempt to say we're going to recognize that there's a legitimate expectation of privacy? I want to make sure I got you right. The you're saying that police didn't have subjectively in their head. We want to search this car. If they had just called Mr. Culp with with nothing more than a, hey, your car's on the street. What do you want to do with it? And then he'd said, take it into custody. That would be I have been a legitimate thing to do. No, I apologize, Judge. That's not what I'm saying. What I'm saying is that in this, under these facts, what the police did in this situation was attempt to override and undermine the expectation of privacy that my client had as a borrower of that vehicle by calling Mr. Culp and not taking the intervening step in contacting the person who had legitimate, legitimate, the legitimate lease and possession of the vehicle under the contract, which would be saying they were. Sir, I've seen your. It's what they were trying to do. It's what they were attempting to do that matters, not how it played out objectively, which is, I think, with the with the case of do guy says, which is essentially you can't use it as a pretext. You can't use the community caretaking function in order to seize a vehicle in an effort to really search it, because your reasons behind. Sir, this is Judge Alderson. Time is fleeting. Case of Wren, W-H-R-E-N-V, United States Supreme Court. Pretext not relevant if seized to seizure. If police have any lawful reason to seize. Now, you've been throwing the word pretext around in all your argument. How do you answer the Supreme Court's position in the Wren case? In this particular case. Are you familiar with it? I am, Your Honor. In this particular case, the request for impoundment by Mr. Karp missed the intervening step, which would have been check the contract to see who, in fact, was legitimately in possession of that vehicle under the contract, and then take the step and contact them to find out whether or not they, in fact, gave authority to the appellant to use the vehicle. And I think if that step was taken, Can the direction of the owner to the police qualify in the language of the Supreme Court of any lawful reason to seize? Well, it goes back to the question of whether the community caretaking function is a legitimate reason under these circumstances. And I think what the courts have said about community caretaking function would be if the car was in a illegal position on the road, if the car was damaged in some way and caused a hazard to the public, if the car was somehow in a position because remember, Your Honor, the courts have said regarding the community caretaking function, we're not here to ensure that private owners are protected against the potential theft of the vehicle or damage to the vehicle that might be left lawfully on the side of the street. So here, the community caretaking function as a justification for the seizure of the vehicle, I think not only is a pretext, but it doesn't override under when it doesn't override the required steps that I think need to be taken to ensure the protection of the Fourth Amendment rights of all citizens. Because it isn't just Mr. Kennedy. It's every single car that's stopped in this jurisdiction if authorized under the government's argument to stop a vehicle and then conduct a search under the guise that they don't have an expectation of privacy or they haven't shown one at that particular time. So the protection of the Fourth Amendment here intertwines with the notion that the police do not have, did not conduct the intervening steps required to ensure that protection. And that's what I said in my opening, that the sphere of police influence... Finish up your response. I'm sorry. Finish up your response. Okay. The sphere of police power here versus the expectation of privacy is really the battle that's going on here. And I think that one can certainly rationalize the lack of standing under these facts. But I think also you could analogize that standing is existent throughout and that the community caretaking function should not justify the seizure of a lawfully parked vehicle two and a half blocks away from a person who's arrested. Thanks very much. Mr. Hetzneger, thank you very much. Thank you for the time. The arguments are very well presented. I thank both counsel. We'll reserve decision. Maybe call the next case.